UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20466-CR-GOLD/BANDSTRA

UNITED STATES OF AMERICA,

vs.

RAMAR HAWKINS,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant Ramar Hawkins' Motion to Suppress [Evidence] (D.E. 29) filed on July 31, 2007. On August 21, 2007, this motion was referred to the undersigned for appropriate proceedings by the Honorable Alan S. Gold pursuant to 28 U.S.C. § 636(b). Accordingly, the undersigned conducted an evidentiary hearing on this motion on August 7, 2007. Based on the facts as found herein and applicable law, the undersigned recommends that this motion to suppress be DENIED.

## FINDINGS OF FACT[1]

On May 3, 2007, between 2:00 and 3:00 a.m., the City of Miami Police Department received an emergency ("911") telephone call advising of a pregnant woman being assaulted by her husband in an apartment located at 107 N.E. 71th Street in Miami,

---

[1] These factual findings are based on the testimony of Officer Daniel Sanon of the City of Miami Police Department and Special Agent Jason Stankiewicz of the United States Bureau of Alcohol and Tobacco and Firearms. Defendant called no witnesses at the suppression hearing.

Florida.  The caller, Shanti Davis, advised that the assault was occurring in her apartment and that  the alleged assailant was a black male wearing a green shirt and blue jeans.  Ms. Davis further advised that the victim was nine (9) months pregnant and that the assailant was her husband.

The Miami Police Department responded by dispatching several police units to the reported location.  Officer Daniel Sanon responded by activating the emergency lights and sirens on his police car and driving quickly to the location.  Officer Sanon arrived a few minutes later and observed a red pick-up truck being driven by a black male wearing a green shirt attempting to  pull out of a parking spot located close to the reported location. Officer Sanon also observed that no other vehicles were being driven in the area at that early hour.  Officer Sanon, still operating his unit with emergency lights and siren, pulled just past the departing vehicle.  Officer Sanon saw that the truck was not stopping and appeared to be fleeing from the scene.  Consequently, Officer Sanon quickly backed his own vehicle in the path of the departing truck thereby preventing its flight from the area.

Officer Sanon  exited his police car and, with gun drawn, ordered the driver, later identified as Ramar Hawkins ("defendant"), to exit his vehicle.  Defendant opened his car door and stepped out.  Officer Sanon cautiously approached defendant and ordered him to place his hands on the outside of the truck.  Defendant did so while insisting that he had done nothing wrong.  Officer Sanon proceeded to handcuff defendant - - advising that he was not being arrested but merely restrained by the officer while he determined what was "going on."  At the same time, Officer Sanon was able to see inside  defendant's vehicle and saw a hand gun in the open console between the front seats.

Meanwhile, other police officers responded to the scene and proceeded to the

2

apartment reported by Santi Davis.  Ms. Davis and the alleged victim were located therein and confirmed that the assault had occurred as reported by telephone.  The victim, defendant's wife, had cuts on her face and blood around her mouth.  Defendant was brought to the apartment where Santi Davis identified him as the assailant. The victim was unwilling to provide that identification.  Defendant was arrested for aggravated battery and for illegal possession of a firearm by a convicted felon.

## ANALYSIS

Defendant moves to suppress the firearm and all other items seized from his automobile as "fruits of a warrantless search" in violation of the Fourth Amendment to the United States Constitution.  Defendant raises two specific issues in his motion.  First, defendant contends that he was initially detained without reasonable suspicion in violation of *Terry v. Ohio*, 392 U.S. 1 (1968).  Second, defendant contends that his arrest was unlawful because the officers lacked probable cause to believe that he had committed a crime so that the search of his vehicle without a warrant was also unlawful.

A. Reasonable suspicion to detain defendant

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Cohen*, 481 F. 3d 896, 898 (6th Cir. 2007) (*quoting United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  To satisfy the requirements of the Fourth Amendment, a police officer may make an investigatory stop of a vehicle only if the officer has a "reasonable suspicion supported by articulable facts that

3

criminal activity 'may be afoot.'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1 (1989)(*quoting Terry v. Ohio, supra*)).  Reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (*quoting United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

Here, Officers Sanon had a reasonable suspicion to stop defendant's vehicle and detain him based on articulable facts that criminal activity was "afoot" at the time he stopped defendant's vehicle.  As found above, Officer Sanon encountered defendant while responding to an emergency 911 call involving an alleged aggravated assault on a pregnant woman.  Officer Sanon found defendant outside of the reported location in a vehicle preparing to leave the area.  Defendant matched, at least in part, the description given by the 911 caller in that he was a black male wearing a green shirt.  Defendant was the only person observed in the parking area outside the apartment at that early morning hour.  Most importantly, defendant appeared to be in a "hurry" to leave the area and appeared to the officer to be fleeing from the scene.

These circumstances, considered in their  totality, gave rise to a reasonable suspicion that defendant was possibly involved in the reported assault sufficient to prevent his departure and detain him for further investigation.  As explained in *Adams v. Williams,* 407 U.S. 143, 145 (1972), "the Fourth Amendment does not require a policemen who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders to allow a crime to occur or a criminal to escape."  In fact, "'it may be the essence of good police work' to maintain the status quo that allows the police officer to investigate

4

further the possibility of criminal involvement." *United States v. Moore*, 817 F.2d 1105, 1107 (quoting *Adams v. Williams,* 407 U.S. at 145).   Thus, "[a] brief investigatory stop is permissible whenever the police officer has a  reasonable suspicion grounded in specific and articulable facts that the person he stopped has been or is about to be involved in a crime." *Id.* (citing *United States v. Hensley*, 469 U.S. 221 (1985); and *Terry v. Ohio*, 392 U.S. 1 (1968)).

Here, Officer Sanon had reasonable suspicion to stop and detain defendant for a brief investigatory inquiry based on the reported crime, defendant matching the description of the alleged assailant, the time and location where he was found, and defendant's apparent attempt to flee the scene.  As correctly noted by the government, flight is an important consideration for a finding of reasonable suspicion.  *See United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003).  Consequently, Officer Sanon had a lawful basis to stop and detain defendant while a further investigation was conducted at the scene.[2]

B.  Probable cause to arrest

Defendant also contends that the police officers lacked probable cause to arrest him because his wife, the alleged victim, was unwilling to identify defendant as her assailant. Defendant ignores the fact that a second person, Santi Davis, personally witnessed the assault and identified defendant as the assailant.   Clearly, the officers had probable cause

---

[2]In so finding, the undersigned finds significant factual distinctions between this case and  *United States v. Cohen, supra*, relied upon by defendant in his motion. Among other distinctions, the police officer here had a report of an actual crime, not just a 911 "hang up" call, and a suspect (defendant) fitting the description of an eye witness to the crime.

to arrest defendant once identified as the assailant by the eyewitness after which they confirmed that defendant, a convicted felon, was also in possession of a  firearm. Defendant was arrested on both charges.

## RECOMMENDATION

For all of the foregoing reasons, the undersigned recommends that Defendant's Motion to Suppress [Evidence] be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Alan S. Gold, United States District Judge, within five (5) days of receipt. See 28 U.S.C. § 636(b)(1)( c); *United States v. Warren*, 687 F.2d 347 (11th Cir. 1982); *cert. denied,* 460 U.S. 1087 (1983); *Hardin v. Wainwright*, 678 F.2d 589 (5th Cur. Unit B 1982); *see also Thomas v. Arn.*, 474 U.S. 140 (1985).

**RESPECTFULLY SUBMITTED** this ₈₂ day of August, 2007, in Miami, Florida.


TED E. BANDSTRA
CHIEF UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Honorable Alan S. Gold

All counsel of record

6